Welch, J.
The assignments of error in this case are-quite numerous, but they may be reduced to the following, which will be considered in the order in which they are-stated :
1. The bond is not in pursuance of the statute. It only binds the obligors for money received by the treasurer for “state, county, township,and free turnpike road purposes,” and it binds them for the faithful performance of the treasurer’s general duties of office; whereas, the statutory bond binds the obligors for moneys received by the treasurer for “ state, county, township, and other purposes,” and does not bind them for the treasurer’s performance of the general duties of his office. 2 S. & C. 1584, sec. 2.
We think there is no substantial difference between the-two forms of bond. The condition contained in this bond, that the treasurer will “ faithfully and impartially discharge- and perform all the duties of said office,” is in substance and legal effect the equivalent of the condition that he shall pay over moneys received for “ other purposes ” than those-specifically named.
This view of the case disposes of two other assignments of error — namely, that the bond can not be enforced as a common-law bond against the sureties, and that said sum of $6,831.02, received for other purposes than those named in the bond, should not have been included in the judgment. We hold the bond to be the equivalent of the statutory bond; and surely its condition, which required the treasurer to discharge all the duties of his office, was broken by his failure to pay over this sum of $6,831.02.
2. The bond is void, or never took effect, because it was- *577 not certified to be in due form of law by tbe prosecuting-attorney, as required by tbe statute (59 Obio L. 77, sec. 5) because it was not accepted and approved; and because, at tbe time it was executed, tbe office bad become vacant by tbe treasurer’s failure to give bond and take tbe oatb of office on or before tbe 2d day of September, wben bis term-of office was to commence.
Tbe objection tbat tbe bond was not accepted and approved is not founded in fact. It was orally accepted by two of tbe commissioners, and tbat in our judgment is sufficient. Tbe better practice undoubtedly is to put tbe acceptance in writing, or to enter it on tbe journal, but we know of no law making it indispensable.
Tbe law requiring the certificate of tbe prosecuting attorney to be indorsed on tbe bond is merely directory,, and the want of such a certificate by no means avoids or invalidates tbe bond.
Tbe effect of tbe treasurer’s failure to give bond, or take tbe oatb of office, on or before the first day of tbe term, involves a more serious question. Tbe statute (2 S. & C. 1479) expressly declares tbat upon such failure tbe office-shall be held to be vacant, and makes it'the duty of tbe commissioners to fill it by appointment. I suppose the-true construction of this statute to be, tbat upon such failure to give bond and take tbe oath, tbe office ipso facto becomes vacant, without any resolution of tbe commissioners to tbat effect, and without tbe appointment of any one to tbe office, and that tbe treasurer elect in- such caséis liable at any time thereafter to be ousted from tbe office-by a proceeding on tbe part of tbe public, or of an appointee. It seems to us, however, tbat tbe treasurer and bis sureties are estopped from setting up this defense. By their bond, executed on tbe 5th, and delivered to tbe commissioners on tbe 6th of September, 1872, they in legal effect declared Parker to be then legal treasurer elect of Brown county, and it would be manifestly unjust to permit, them now, after bis enjoyment of tbe office and its emolu *578 ¡merits, to falsify or take back that declaration. It was this bond, more than anything else, that gave color to Parker’s ■claim to the office, and constituted him, what we think he really was, treasurer de facto, and not a mere intruder without color of right. We think, under such circumstances, it is for the public, and not for the treasurer or his sureties, to interpose the objection that he was not treasurer de jure at the date of the bond. They are bound by the fact that the bond was executed for him as treasurer, and the fact that he has been permitted to enjoy the office.
3. The bond was vitiated by attaching Parker’s signature to it after it had been delivered.
We think not. Parker’s name is recited in the bond as one of the obligors, and this implies that he is to sign it, and is prima facie evidence that he signed it with the assent of his co-obligors. It does not, therefore, vitiate the bond. The auditor, in thus permitting it to be signed by Parker, was but carrying out the intention of all the parties to the bond.
4. No penalty should have been allowed by the court, this not being a statutory bond, but a common-law bond. As has been said, we consider this in legal effect as equivalent to a statutory bond. But whether it be denominated a statutory or common-law bond, we think the language of the statute allowing the penalty is broad enough to cover the case. The statute (2 S. & C. 1587, sec. 25) allows the penalty in all cases where “ suit ” is brought against the treasurer and his sui’eties, for his failure to “ pay over money ” agreeably to law. The statute makes no discriminations as to the form of the bond. The penalty attaches wherever a recovery is had in a suit against him or his sureties for money which he has failed to pay over according to law.
5. The referee’s report does not show when the default ot Parker occurred, or that the same, or some part of it, did not occur prior to the 2d day of September, 1872, during Ms preceding term.
The answer to this objection is, that a default will not be *579 presumed, but must be affirmatively shown. Parker was his own successor, and we must presume, in the absence of proof to the contrary, that at the end of his former term he had in his hands the full amount with which he was then chargeable. Having it in his hands at the end of his term, is equivalent to paying it over to himself, he being his own successor.
6. The State of Ohio is not authorized to sue on the bond, and if it is authorized, it should sue for the use of the different parties, as townships, roads, etc., to whom the different funds belong, and the court therefore erred in refusing to strike out from the entitling of the case, the words “ for the use of the commissioners of Brown county.”
The bond is made payable to the State of Ohio, and the state is a proper party to bring suit. The designation of the “ use ” for which the suit is brought does not vitiate. It may be regarded here as mere 'surplusage. It is a matter between the state and the county, township, and other parties ultimately entitled to the funds, and can in no way prejudice the rights of the defendants. The money is primarily for the use of the county, for it is to be paid into the county treasury, and thence distributed.
7. The court erred in refusing to set aside the report of the referee, on the ground that the reference was made without any “ agreement ” of parties, either in writing, or evidenced by an entry upon the journal, agreeably to the requirement of section 281 of the code of civil procedure.
The reference was made on the motion of the defendants. Surely they can not be permitted now to object that their motion was granted. Their motion, and the acquiescence or non-objection of the other party, are equivalent to an agreement. They are, in fact, an agreement.
Upon the whole, we see no error in the record, and the motion for leave must be overruled. Motion overruled.
McIlvaine, C. J., "White, Rex, and Gilmore, JJ., concurred.